**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SYLVIA L. PARHAM | ) |
| | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| CITIMORTGAGE INC, CITIBANK INC, CT | ) |
| LIEN SOLUTIONS | ) |
| Defendants, | ) |

## COMPLAINT

NOW COMES SYLVIA L. PARHAM ("Ms. Parham"), by and through her attorney of

the MINES LAW OFFICE, LLC, and as for her Complaint states as follows:

## NATURE OF THE ACTION

1.      This is a consumer damage action by Ms. Parham, seeking damages and

attorney's fees under federal and state law against her current and previous mortgage servicers.

2.      Ms. Parham was unfairly reviewed and denied for a loan modification under the

Treasury Department's Home Affordable Modification Program (HAMP), and was not properly

reviewed for loss mitigation as required by her mortgage and note.

3.      Moreover, after Ms. Parham asserted her rights under the new Request for

Information procedures imposed by the Consumer Financial Protection Bureau pursuant to its

authority under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, and

CitiMortgage failed to provide the information requested in the Request for Information.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction over Ms. Parham's claims pursuant

to 12 U.S.C. §2605 and 12 U.S.C. § 2607. Supplemental jurisdiction over the state law claims

exists under 28 U.S.C. § 1367(a).

1

5. Further, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) and/or (d) because Parham is a citizen of the state of Illinois and Defendant is a citizen of the state of New York. Thus, the parties are citizens of different states. In addition, the individual matter in controversy between them exceeds $75,000, exclusive of interests and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff Parham resides in this District, the property that is the subject of this action is situated in this District, and a substantial part of the events or omissions occurred in this District.

## PARTIES

7. Plaintiff Sylvia L. Parham ("Ms. Parham") is a natural person residing within this Court's jurisdiction at 3825 W. 137th Street, Robbins, IL 60472.

8. Defendant CITIMORTGAGE, INC ("Citi"), is one of the largest mortgage lenders in the United States, and is the servicer of Ms. Parham's loan. Citi is engaged in the business of servicing subprime loans and is a subsidiary of Citibank, N.A. Citi is a participant in the HAMP program.

9. Defendant CITIBANK, N.A., ("Citibank") is a New York banking corporation organized under the laws of New York. Citibank is deemed to be a citizen of New York for purposes of diversity jurisdiction.

10. Defendant CT Lien Solutions ("CT Lien") works closely with lenders and servicers nationwide, including firms that find preparing and recording mortgage assignments and curing defective assignments complex and potentially overwhelming. CT Lien's address is 2929 Allen Parkway, Suite 3300, Houston, TX 77019.

## Background

2

A.      **Consumer Financial Protection Bureau ("CFPB")**

11.      In February 2012, 49 state attorney generals, the District of Columbia and the federal government announced a historic joint state-federal settlement with the country's five largest mortgage servicers, with one being CitiMortgage, Inc. Copies of these settlements can be found here: www.nationalmortgagesettlement.com.

12.      In the National Mortgage Settlement ("NMS"), CitiMortgage, Inc made a financial commitment to modify mortgages over and above what it had already generally committed to under the HAMP program, with special attention to underwater loans, like Ms. Parham. Also under the NMS, CitiMortgage, Inc became obligated to change its servicing practices, including: (a) a requirement that, before foreclosing, it would notify all borrowers of any available "loss mitigation" alternatives to foreclosure, such as HAMP; (b) a commitment to convert all languishing TPP agreements to permanent loan modifications; and (c) restricting any further "dual-track" foreclosure and HAMP processing.

13.      Under the NMS, CitiMortgage, Inc. also agreed to various restrictions on the fees and charges placed on delinquent mortgage accounts. More specifically, (a) it was supposed to cease charging monthly "property inspection fees" for occupied properties where contact was established with the owner-occupant; and (b) it agreed to monitor its foreclosure firms and ensure that no unreasonable foreclosure fees or expenses were being billed to accounts in foreclosure.

14.      Specifically, the complaint alleged that CitiMortgage, Inc routinely:

- Charged borrowers unauthorized fees for default-related services;
- Provided false or misleading information in response to consumer complaints;
- Failed to effectively assist, and in fact impeded, struggling homeowners trying to save their homes.

3

- Failed to provide accurate information about loan modifications and other loss mitigation services;

- Failed to properly process borrowers' applications and calculate their eligibility for loan modifications;

- Provided false or misleading reasons for denying loan modifications;

- Engaged in illegal foreclosure practices; and

- Provided false or misleading information to consumers about the status of foreclosure proceedings where the borrower was in good faith actively pursuing a loss mitigation alternative also offered by CitiMortgage

15. CitiMortgage collectively signed a consent order, agreeing to change the way it services mortgages to ensure that borrowers are protected from the illegal behavior that puts them in danger of losing their homes.

16. In January 2013, the CFPB released new rules on mortgage servicing that applies to CitiMortgage. The standards that CitiMortgage must adhere to according to this court order are in addition to the protections offered to consumers under the new rules effective January 10, 2014.

17. The CFPB took action against CitiFinancial Servicing and CitiMortgage, Inc. for giving the runaround to struggling homeowners seeking options to save their homes. The mortgage servicers kept borrowers in the dark about options to avoid foreclosure or burdened them with excessive paperwork demands in applying for foreclosure relief.

18. The CFPB is requiring CitiMortgage to pay an estimated $17 million to compensate wronged consumers, and pay a civil penalty of $3 million; and requiring CitiFinancial Services to refund approximately $4.4 million to consumers, and pay a civil penalty of $4.4 million

**FACTUAL ALLEGATIONS**

19.     Plaintiff, Sylvia L. Parham is the sole owner of the single-family residence commonly known as 3825 West 137th Street, Robbins, IL 60472 ("the Property")

20.     On February 25, 2007, a security instrument was given to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Concord Mortgage Company.

21.     On May 18, 2007, Concord Mortgage Company sent Ms. Parham a Notice of Assignment informing Ms. Parham her loan was sold to CitiMortgage Lending.

22.     On May 20, 2013, Citibank, N.A., sent Ms. Parham a notice of purchase, assignment, sale or transfer of mortgage loan informing her the new owner of her loan was Citibank, N.A. and the servicer was CitiMortgage, Inc.

23.     On December 12, 2015, Ms. Parham sent a Request for Information ("RFI"), as further defined by Reg. X, 12 C.F.R. § 1024.36(a) to CitiMortgage, Inc requesting a breakdown of all the fees that had been assessed to her account, the invoices showing the fees had been paid, the name of the owner of her loan, and proof of any assignments, as well as the consideration for any purchases.

24.     On December 19, 2015, Ms. Parham applied for a loan modification through a third party by submitting a complete loan modification application package to CitiMortgage which included a cover letter.

25.     On December 22, 2015, CitiMortgage informed Ms. Parham that it had received her request for a modification, and it was under "review."

26.     On December 29, 2015, CitiMortgage partially responded to Ms. Parham's December 12, 2015 RFI, and informed her the owner of her loan was CBNA FHA/VA Hold Portfolio Citibank, N.A., but failed to provide her proof of any assignment.

27.     On or about December 30, 2015, Ms. Parham contacted Ross Whiting (CitiMortgage Homeowner Support Specialist).  She requested to be reviewed for a loan modification with a principal reduction, and a 2% interest rate or short payoff.  Mr. Whiting informed Ms. Parham that CitiMortgage did not offer the assistance she was requesting over the phone as well as in the cover letter she sent to Citi on December 19, 2015.

28.     On January 2, 2016, CitiMortgage requested Ms. Parham send documents that she had already submitted to them.

29.     On January 5, 2016, through a third party, Ms. Parham re-sent the requested documents.

30.     CitiMortgage repeatedly asked Ms. Parham to send documents that were not applicable to her request or documents that she already had submitted.

31.     On January 11, 2016, CitiMortgage responded to Ms. Parham's December 11, 2015 RFI letter, but failed to provide proof of any assignments.

32.     On February 22, 2016, Ms. Parham sent a second RFI, as further defined by Reg. X, 12 C.F.R. § 1024.36(a) to CitiMortgage, Inc requesting proof of assignments, as well as the date her loan had been assigned.

33.     On March 7, 2016, CitiMortgage sent Ms. Parham a letter informing her that assistance was available to her, and did not her previous request for loss mitigation.

34.     On June 3, 2016, CitiMortgage did approve Ms. Parham for a modification, but the terms did not reflect 31% of her current monthly income, there was additional interest included, and there was no principal reduction.

35.     On June 15, 2016, Ms. Parham sent a third RFI, appeal, and a Notice of Error to CitiMortgage. Specifically, the "mortgage document" Citi provided indicated that the date of

recording was March 9, 2016, but Ms. Parham closed on her property on April 25, 2007. In addition, Ms. Parham requested information as to the fees associated with the trial payment plan and proposed principal balance, guidelines as well as a breakdown of all the fees included in the capitalized loan amount. Lastly, she requested to know the value of her home that Citi alleged, and whether she was eligible for a principal reduction.

36.     On July 7, 2016, CitiMortgage responded to Ms. Parham's RFI, Notice of Error and appeal, but did not provide her with the information as requested and required.

## COUNT I (RESPA Request for Information)
## CitiMortgage

37.     Ms. Parham re-states and incorporates paragraphs 1-36.

38.     The December 12, 2015, February 22, 2016 and June 15, 2016 letters included a Request for Information, as further defined by Reg. X, 12 C.F.R. § 1024.36(a), in that it requested information that sufficiently identified the Mortgage and properly specified information relating to the Mortgage.

39.     Upon receipt of the Request for Information, CitiMortgage was obligated either to provide the requested information or conduct a "reasonable search" and notify the borrower that the requested information was not available. Reg. X, 12 C.F.R. § 1024.36(d).

40.     CitiMortgage failed to provide information specified in the RFI that was available, including, but not limited to: proof of consideration for any assignments; or when the loan was assigned. CitiMortgage failed provide any of the information regarding to the loan modification in the June 15, 2016 RFI.

41.     CitiMortgage failed to conduct the "reasonable search" for available information mandated by Reg. X, 12 C.F.R. § 1024.36(d)(1)(ii).

42.     CitiMortgage failed to provide a written response compliant with Reg. X, 12

C.F.R. § 1024.36(d)(1)(ii) and was noncompliant in that CitiMortgage failed to notify Ms.

Parham whether the information she had requested was available or not available.

43.     CitiMortgage failed to provide a written response compliant with Reg. X, 12

C.F.R. § 1024.36(d)(1)(ii) and was noncompliant in that CitiMortgage failed to respond and/or

reference categories of information that are excluded from the obligation to respond (unduly

burdensome, overbroad, and confidential, privileged, or proprietary); and failed to provide any

information that fell into any of the cited exclusions.

44.     CitiMortgage's failure to comply with its obligations with regard to Ms.

Parham's Request for Information was part of a pattern of failing to properly respond to Ms.

Parham's earlier written inquiry which asked for information related to the servicing of her

account.

45.     CitiMortgage's noncompliant investigation and written response to Ms. Parham's

Request for Information was part of an ongoing and deliberate practice of noncompliance, in

that it occurred pursuant to a policy of CitiMortgage regarding how it would respond to requests

for information under the new Dodd-Frank regime. Among other things, CitiMortgage made a

deliberate decision that it would not produce documents that CFPB had expressly declared were

not covered by the exclusions. See Official Bureau Interpretation, Supplement I to Part 1024, ¶

36(d)-2 (listing examples of retrievable information, including audio files or transcripts of

telephone conversations with the borrower and files in off-site storage).

46.      It is CitiMortgage's common business practice to fail to respond to borrower's

RFI.

47.      As a result of CitiMortgage's failure to comply with its above-described

obligations Ms. Parham suffered damages, including emotional distress and the cost of hiring an

auditor and lawyer to obtain critical information about CitiMortgage's handling of her account, and paying postage and copying fees.

48. In addition to her actual damages, Ms. Parham is entitled to statutory damages not in excess of $2000 for CitiMortgage's above-described pattern or practice of noncompliance, plus attorney fees and costs, pursuant to 11 U.S.C. § 2605(f).

WHEREFORE, Plaintiff SYLVIA L. PARHAM respectfully requests that this Honorable Court:

(1) Statutory and actual damages;

(2) Attorney Fees;

(3) Litigation expenses and costs of suit; and

(4) Such other or further relief as the Court deems proper.

## COUNT II – RESPA (Notice of Appeal)

49. Ms. Parham re-states and incorporates paragraphs 1-48.

50. Parham's Mortgage is a "federally related mortgage loan" within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2602(1), in that it is secured by a first lien on residential real property designed for the occupancy of one to four families and the proceeds of it were used to purchase the secured property, and it was made by a lender whose deposits or accounts are insured by the FDIC and who is regulated by the Office of the Comptroller of the Currency.

51. RESPA, 12 U.S.C. § 2605, imposes various obligations on "servicers" of "federally related mortgage loans," enforceable by "borrowers," pursuant to 12 U.S.C. § 2605(f).

52. Defendant CitiMortgage is the "servicer" of this "federally related mortgage loan," within the meaning of 12 U.S.C. § 2605.

53. The "borrower" on the mortgage, within the meaning of 12 U.S.C. § 2605, is "Sylvia L. Parham".

54. Among the legal duties imposed on servicers by 12 U.S.C. § 2605, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010), is the obligation to respond to an error in the handling of a borrowers account or requesting specific information related to the account. *See* 12 U.S.C. § 2605(e) and (k)(1)(C).

55. Pursuant to the authority granted by 12 U.S.C. § 2605(j) (3) and § 2605(k) (1) (E), the Consumer Financial Protection Bureau (CFPB) issued regulations, which went into effect January 14, 2014, defining appeals of loss mitigation encompassed by 12 U.S.C § 2605(e)-a Notice of Appeal, *see* Regulation X, 12 C.F.R. §1024.41(h).

56. A borrower has the right to appeal a servicer's denial of a loss mitigation application for any trial or permanent loan modification available to the borrower if the borrower submitted a complete application 90 days or more before a foreclosure sale (or during the pre-foreclosure period set forth in 12 CFR 1024.41(h)). The borrower must commence the appeal within 14 days after the servicer provides the notice stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower. 12 CFR 1024.41(h)(2). The regulation further provides that the appellate review must be conducted by personnel different than those responsible for evaluating the borrower's complete loss mitigation application. 12 CFR 1024.41(h)(3).

57. The servicer is required to notify the borrower of its decision within thirty days of receiving the appeal. 12 CFR 1024.41(h)(4).

58. On June 15, 2016, Ms. Parham sent by registered and certified mail her appeal in

regards to her loss mitigation as further defined by Reg. X, 12 C.F.R. §1024.41(h) that

sufficiently identified the Mortgage and properly specified information relating to the Mortgage.

59.     Upon receipt of the Appeal, CitiMortgage had up to 30 days to determine whether

to offer Parham a loss mitigation option based on the appeal.

60.     CitiMortgage failed to provide a written response compliant with Reg. X, 12 CFR

1024.41(h)(4).

61.     CitiMortgage's non-compliant response to Ms. Parham's appeal is covered by 12

U.S.C. § 2605(e).

62.     As a result of CitiMortgage's failure to comply with its above-described

obligations Parham suffered damages, including late fees, mental anguish and inconvenience,

late payment on the credit report causing Parham's credit score to drop, emotional distress and

the cost of filing a suit to persist in these efforts to obtain critical information about

CitiMortgage's handling of her loss mitigation.

63.     In addition to her actual damages, Parham is entitled to statutory damages not in

excess of $2000 for CitiMortgage's above-described pattern or practice of noncompliance, plus

costs, pursuant to 11 U.S.C. § 2605(f).

WHEREFORE, Plaintiff SYLVIA L. PARHAM respectfully requests that this Honorable

Court:

(1) Statutory and actual damages;

(2) Attorney Fees;

(3) Litigation expenses and costs of suit; and

(4) Such other or further relief as the Court deems proper.

### COUNT III
*Violations of the Illinois Consumer Fraud Act (Deceptive)*

*CitiMortgage and Citibank, N.A.*

64.     Ms. Parham re-states and incorporates paragraphs 1-63.

65.     Parham meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

66.     Defendants violated 815 ILCS 505/2 by engaging in deceptive acts and practices when it failed to properly review Ms. Parham for a loan modification and delayed in approving her for a loan modification.

67.     Ms. Parham has been injured because due to the delay in approving her for a modification, her credit has declined from 700 to 580 due to the late payments and her principal balance has increased.

68.     CitiMortgage's conduct occurred in the course of trade or commerce.

69.     Ms. Parham has been further damaged because she had to hire a third party to assist her with a modification.

70.     An award of punitive damages is appropriate because CitiMortgage conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of Ms. Parham. CitiMortgage will continue to engage in this type of deceptive behavior regardless of how many complaints or consent orders it has been involved in as evidenced by the NMS and DOJ settlements.

WHEREFORE, SYLVIA L. PARHAM respectfully requests the following relief:

        (1) Statutory damages;

        (2) Litigation expenses and costs of suit; and

        (3) Punitive Damages

        (4) Such other or further relief as the Court deems proper

**COUNT IV**
*Illinois Consumer Fraud Act (Unfair)*

*CitiMortgage*

71.     Ms. Parham re-states and incorporates paragraphs 1-70.

72.     It was unfair for CitiMortgage to make Ms. Parham apply for a loan modification three times over a seven-month period and finally approve her with the same information she submitted when she applied for a loan modification in December 2015.

73.     It was also unfair and against public policy to not give Ms. Parham the proper information regarding her loan modification since the goal off all loan modifications is to avoid foreclosures and to stabilize the community.

74.     CitiMortgage's conduct occurred in the course of trade and commerce.

75.     Ms. Parham had been damaged because her credit has been damaged, her principal has increased, and she had to incur copying fees, mail fees, and fax charges.

WHEREFORE, SYLVIA L. PARHAM respectfully requests the following relief:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

## COUNT V
### *Illinois Consumer Fraud Act (Deceptive)*
### *CT Lien Solutions and CitiMortgage*

76.     Ms. Parham re-states and incorporates paragraphs 1-75.

77.     Ms. Parham meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

78.     Defendants CT Lien Solutions and CitiMortgage violated 815 ILCS 505/2 by engaging in unfair acts and practices collectively while engaging in trade or commerce by:

a.      CitiMortgage created, signed, and through CT Lien Solutions had

recorded in the Cook County Recorder's office a document purported to be assignments where the signatory of the document claimed under oath to have personal knowledge of the information, assertions, or averments contained in the document when, in truth and in fact, the signatory had no such knowledge;

        b.    creating, signing, and recording in the Cook County Recorder's office documents that contained false, deceptive, or misleading information, assertions, or averments such as;

        i.    claiming, under oath, that Shelia Brooks signatory had conducted a review of the facts surrounding the purported transfer of the mortgage when, in truth and fact, the she had not conducted any such review;

        ii.    claiming under oath, that the signatory had made a conclusion or determination based on the signatory's review of the purported transfer when, in truth and in fact, the signatory made no such conclusion or determination;

        iii.    Misrepresenting Shelia Brooks was assistant secretary for MERS as nominee for Concord Mortgage company March 1, 2016 when Citibank, N.A was alleged to be the owner of her loan on beginning May 1, 2013 and pursuant to a May 1, 2012 letter from CitiMortgage, Ms. Parham's loan was transferred to CitiMortgage in 2007.

        c.    misrepresenting the signatory of Shelia Moore as Assistant Secretary or authorized signatory, or assistant secretary of a financial institution, without limitation when, in truth and in fact, the individual signing the document is an employee of CitiMortgage, who, at best, has only limited, nominal authority from the financial institution;

14

d.     misrepresenting the mortgage and note had been properly transferred when in fact it was not;

79.     CitiMortgage and CT Lien Solutions has engaged in a course of trade and commerce which constitute unfair and deceptive practices by misrepresenting the owner of Ms. Parham's loan by creating and recording a deceptive document that has clouded Ms. Parham's title.

80.     As a result of the Defendants above actions, Ms. Parham has been injured by loss of equity, and hiring an auditor to review her paperwork and documents to discover the deceptive assignment.

81.     An award of punitive damages is appropriate because Defendants conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of Ms. Parham.

WHEREFORE, SYLVIA L. PARHAM respectfully requests the following relief:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

## COUNT VI
### *Common Law Fraud*
### *CitiMortgage*

82.     Ms. Parham re-states and incorporates paragraphs 1-81.

83.     The elements of common-law fraud are (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance on the statement; and (5) the plaintiff's damages resulting from reliance on the statement.

84.     Ross Whiting informed Ms. Parham that the loss mitigation she was requesting was not available which was false.

84.     The information was false because the DOJ settlement that CitiMortgage consented to, as well as the CFPB and NMS rules provided a means for the relief Ms. Parham requested.

85.     Ross Whiting knew the information was false because he is specialist for CitiMortgage and was or should have been trained on the terms of the DOJ, CFPB and NMS consent orders.

86.     Albeit, untruthful Ross intended for Ms. Parham to rely on this statement so she would forego requesting a principal reduction.

87.     As a result, Ms. Parham did not receive a principal reduction and her principal balance has increased and her credit score has went down as a result of the late payments reporting to the credit bureau.

WHEREFORE, SYLVIA L. PARHAM respectfully requests the following relief:

(1) Actual damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

**JURY DEMAND:** Ms. Parham demands a trial by jury.

Respectfully submitted,

By: /s/ Sean M. Mines
Plaintiff's Attorney

Attorney No.: 6302540
Sean M. Mines
Attorney
Mines Law Office, LLC
211 West Wacker Drive
Suite 322
Chicago, IL 60606
Ph. (312) 809.0011